# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-01141-SCT

*KENNETH J. WILSON, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2004 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE D. ROUSSELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/17/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND DICKINSON, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Kenneth J. Wilson, Jr., was convicted in the Jones County Circuit Court, Second Judicial District, of murder and aggravated assault and sentenced to life plus twenty years under the supervision of the Mississippi Department of Corrections. On appeal, Wilson assigns five errors: denial of his six motions to suppress confessions; failure to give the jury an instruction defining deliberate design; failure to grant his request for JNOV and/or a new trial; failure to give a two-theory instruction to the jury; and cumulative error. Finding no reversible error, we affirm Wilson's conviction and sentence.

## FACTS

¶2.     The events giving rise to this appeal began on the evening of July 2, 2003. Officer Tyrone Keller was called to a domestic disturbance at the home of Rika Carmichael, which she shared with Wilson, his live-in girlfriend Lisa Williams and her two children – Michael D'Anthony Williams and a younger son. Wilson and Lisa had an argument which resulted in Wilson pushing Lisa into a television, and Keller asked Wilson to leave the house. Wilson then went to Lisa's mother's home nearby, in an attempt to work out the problems he was having with Lisa. Another argument broke out, and Keller was again called to the scene. After this second incident, Keller did not arrest Wilson, but took him in his patrol car to the Laurel Police Department where Wilson's parents picked him up around 10:00 P.M.

¶3.     Wilson arrived back at Lisa's home around 11:00 P.M. and knocked on the door, but she would not unlock it to let him in. Wilson became angry, broke the glass of the door with his fist, unlocked it, entered the home and started punching Lisa in the face. A fierce fight erupted when household members, including Lisa's son Michael, came to her defense. Wilson tossed Lisa to the floor and continued to beat her in the face with his fists, while Rika ran to call the police from a neighbor's home. While Lisa was on the floor, Wilson grabbed a knife from the nearby counter, stabbed her fourteen times, and inflicted eleven slash wounds and one chop wound. Three of those wounds were fatal and Lisa bled to death within minutes. While attempting to defend his mother, Michael was stabbed once in the forehead and once in the leg by Wilson.

¶4. The police arrived shortly after the fight ended and found Wilson on the front porch with the knife still in his hand and blood covering his clothing. A standoff between the police and Wilson ensued, during which Wilson stabbed himself several times before the police disarmed him. He was taken into custody and transported to a nearby hospital for treatment of wounds suffered to his arms and hands. During this time Wilson made incriminating statements to the police.

## DISCUSSION

### I. WILSON'S CONFESSIONS

¶5. Wilson asserts that his confessions to the police were involuntary and the product of custodial interrogations conducted without proper *Miranda* warnings. He filed six motions in limine requesting that statements either given directly to the police or in police presence be suppressed. Further, Wilson argues that the trial court erred by not conducting an *Agee*[1] hearing to determine the voluntariness of his confession.

¶6. The relevant facts begin when the police arrived following the final altercation between Wilson and Lisa. As the police were leading Wilson from the house, but prior to placing handcuffs on him, he began making statements regarding his guilt. He continued to make

---

[1] When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury. When, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. *Agee v. State,* 185 So. 2d 671, 673 (Miss. 1966).

statements to the police as they were placing handcuffs on him and even as he was being read his *Miranda* rights. One of the arresting officers interrupted Wilson, loudly saying "Miranda Miranda" at him in an attempt to silence him. Wilson's statements were captured on a video camera mounted on Officer Keller's patrol car, as follows:

Officer Tyrone Stewart: Listen before we ask you any questions you must understand your rights. You have the right to remain silent.

Wilson: I know that.

Stewart: Anything you say can be used against you in court.

Wilson: I know that. I did it.

Stewart: You have the right –

Wilson: Guilty

Stewart: – to talk to a lawyer for advice –

Wilson: Guilty

Stewart: – and to have one with you during questioning –

Wilson: Tyrone, Guilty, Guilty. I don't need one

Stewart: huh?

Wilson: Guilty

Stewart: Okay. One will be appointed for you by the Court before questioning if you wish, if you wish to answer questions without a lawyer, you can stop answering questions at any time. You also have the right to stop at anytime until you talk to a lawyer, Okay?

Prior to reading Wilson his *Miranda* rights, the officers did not ask him any questions.

¶7.      While en route to the hospital, Wilson continued to make statements regarding his guilt. When he arrived at the hospital, he made further statements in the presence of Officer John Cox, who was sent to provide security for Wilson, because the police feared he might become a victim of retribution from Lisa's family. The next day, when police investigator Earl Reed went to the hospital to photograph wounds to Wilson's arms and hands, Wilson again made statements to him without being questioned. Later, Reed and another officer interviewed Wilson on videotape, after again reading him his rights and obtaining his signed waiver. In that video, Wilson described the evening's events in detail and confessed to stabbing Lisa and Michael. Following a hearing where no witnesses were called, the trial judge denied Wilson's six motions to suppress the above statements.

¶8.      In order for a confession to be admissible at trial it must have been intelligently, knowingly and voluntarily given, and not a product of police threats, promises or inducements. *Manix v. State*, 895 So. 2d 167, 180 (Miss. 2005). In determining whether a defendant's confession was intelligently, knowingly and voluntarily given the trial court sits as a finder of fact. *Glasper v. State*, 914 So. 2d 708, 716 (Miss. 2005). Therefore, this Court will reverse the trial court's determination only when it was manifestly incorrect. *Id.* A confession is voluntary when, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice. *Jacobs v. State*, 870 So. 2d 1202, 1207 (Miss. 2004). The prosecution bears the burden of showing beyond a reasonable doubt that the confession was voluntary. *Glasper,* 914 So. 2d at 717; *Manix*, 895 So. 2d at 180.

5

¶9. When a defendant claims that the police have induced a confession through coercion the trial court is required to hold a hearing to determine the voluntariness of that confession. *Thorson v. State*, 653 So. 2d 876, 888 (Miss. 1994) (citing *Abram v. State*, 606 So. 2d 1015, 1030 (Miss. 1992)). At the hearing, held out of the presence of the jury, the State has the burden of proving the voluntariness of the confession via testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion or offer of reward. *Thorson*, 653 So. 2d at 888.

¶10. Wilson asserts that the trial court erred in failing to grant him an *Agee* hearing because his confession was the product of emotional duress caused by the situation and his need for medical treatment. The video of Wilson's confessions clearly indicate they were made of his own free will and without inducement by the police. Wilson failed to provide any evidence of coercion, threats or promises made by specific police officers to secure his confessions. Only those officers claimed to have induced a confession by some means of coercion are required to testify at the hearing. *Abram v. State*, 606 So. 2d 1015, 1030 (Miss. 1992). Since Wilson failed to name specific officers who coerced him or to cite specific examples of coercion, the hearings conducted by the trial court, were sufficient. This argument is without merit.

¶11. Wilson's argument that he was subjected to custodial interrogation without proper *Miranda* warnings is also without merit. To be subject to custodial interrogation, one must be both in custody and undergoing interrogation. A subject is in custody when their right to freely leave has been restricted. *Roberts v. State*, 301 So. 2d 859, 861 (Miss. 1974). The

6

accused is subject to interrogation when he is questioned by the police or the functional equivalent. *Pierre v. State,* 607 So.2d 43, 52 (Miss. 1992). The functional equivalent is any sort of activity which the police reasonably believe would produce an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

¶12. It is clear that Wilson was in custody when he confessed; however, his confessions were not the product of interrogation. The police did not question Wilson until after he was given his Miranda warnings. The statements he made while being arrested, transported to the hospital, and receiving medical treatment were not prompted by police activities; rather, were the product of his own free will. The police did everything in their power to appraise Wilson of his rights. They even went so far as to shout at him, interrupting one of his confessions, to inform him of his rights. We conclude the use of these statements did not violate Wilson's rights.

## II.    DELIBERATE DESIGN INSTRUCTION

¶13. Wilson argues that the trial court committed reversible error in failing to instruct the jury as to the meaning of deliberate design. Wilson admits that neither party requested that instruction; however, he asserts that under *Williams v. State*, 729 So. 2d 1181, 1184 (Miss. 1998), if it was error for the trial court to refuse an instruction defining deliberate design, then it must be error to not give it.

¶14. This issue is procedurally barred because Wilson failed to present the instruction to the trial court. *Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993). Wilson's argument is also

7

without merit. A trial court is not required to sua sponte instruct the jury or suggest jury instructions in addition to what the parties tender. *Id*. In *Williams,* this Court held that it was error for the trial court to *refuse* to grant this instruction when tendered by the defendant. *Williams*, 729 So. 2d at 1184. However, it is not error when a trial court does not instruct the jury as to deliberate design, when the instruction was not presented by either party. *Harris v. State*, 861 So. 2d 1003, 1017 (Miss. 2003); *Blocker v. State*, 809 So. 2d 640, 646 (Miss. 2002).

### III.     WEIGHT AND SUFFICIENCY OF THE EVIDENCE

¶15.    Wilson asserts that the failure to grant his request for J.N.O.V. or alternatively, a new trial. He argues that the sufficiency and weight of all the evidence presented at trial cannot sustain a conviction for killing Lisa with deliberate design or intending to cause or caused serious bodily injury to Michael. Wilson also argues that there was no evidence presented to justify a finding that he was fully aware of his actions and carefully considered their consequences in killing Lisa. Further, he argues that Michael's injuries did not satisfy the serious bodily injury requirement of Miss. Code Ann. § 97-3-7(2) and that they were not intentionally caused, rather were the result of negligence in Wilson's attempt to stab Lisa. Therefore, Wilson argues that he could only be guilty of simple assault and not aggravated assault.

¶16.    A motion for new trial challenges the weight of the evidence, while a motion for J.N.O.V. challenges the sufficiency. There are two separate standards to be applied in

8

reviewing the weight of evidence and sufficiency of evidence. *Hawthorne v. State*, 835 So. 2d 14, 21 (Miss. 2003). With regard to sufficiency of the evidence, reversal can only occur when evidence of one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty. *Id*. However, with regard to weight of the evidence, we will overturn a jury verdict only when it is so contrary to the evidence presented that to let it stand would sanction an unconscionable injustice. *Bush v. State*, 895 So. 2d 836, 845 (Miss. 2005). The power to grant a new trial, on the basis of the weight of the evidence, should be invoked only in exceptional circumstances, when the evidence weighs heavily against the jury's verdict. *Id*. In both situations this Court looks at the evidence in the light most favorable to the State and consistent with the verdict. *Hawthorne*, 835 So. 2d at 22. The State is given the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Id*.

*Deliberate Design*

¶17. Wilson was convicted for Lisa's murder under Miss Code Ann. § 97-3-19(1)(a) which provides in pertinent part:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

> (a) When done with deliberate design to effect the death of the person killed, or of any human being.

This Court has held that malice aforethought, premeditated design and deliberate design all mean the same thing. *Hawthorne*, 835 So. 2d at 19. By definition, malice aforethought and deliberate design are synonymous. *Id*. This Court has also acknowledged that deliberate design connotes an intent to kill. *Id*. That being said, deliberate indicates a full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences. *Jones v. State*, 710 So. 2d 870, 877 (Miss. 1998). Design means to calculate, plan or contemplate. *Id*. However, deliberate design to kill a person may be formed quickly and perhaps only moments before the act. *Id*. Deliberate design, as a matter of law, may be inferred through the intentional use of any instrument which based on its manner of use, is calculated to produce death or serious bodily injury. *Id.* at 878; *Fairchild v. State*, 459 So. 2d 793, 802 (Miss. 1984).

¶18. In the present case, Wilson fought with Lisa all day. The police were called to interrupt two domestic disputes previous to the final attack. Wilson broke the door with his bare fists and proceeded to beat Lisa in the face until she was knocked to the floor. Only then did Wilson grab a knife and repeatedly stab and slash Lisa. He delivered three fatal blows while fighting off her son and other household members. This evidence points directly to a considered plan, deliberately executed, with the purpose of killing Lisa. Given these facts and the applicable standard of review, we cannot agree there was insufficient evidence to support the jury verdict, or to let it stand would sanction an unconscionable injustice. Therefore, this argument is without merit.

*Substantial Bodily Injury*

¶19.   Wilson was also convicted of aggravated assault on Michael under Miss. Code Ann. §

97-3-7(2) which states:

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious
> bodily injury to another, or causes such injury purposely, knowingly or
> recklessly under circumstances manifesting extreme indifference to the value
> of human life; or (b) attempts to cause or purposely or knowingly causes bodily
> injury to another with a deadly weapon or other means likely to produce death
> or serious bodily harm

Wilson argues that given the result of the crime and the fact that Michael was not the initial

intended target of his attack, at most he was guilty of simple assault under Miss. Code Ann. §

97-3-7(1).[2]   This Court has made it clear from the language of these statutes, aggravated assault

and simple assault are carbon copies of each other, with the exception that aggravated assault

requires the use of a deadly weapon.  *Hutchinson v. State*, 594 So. 2d 17, 19 (Miss. 1992).

This suggests that conduct which is simple assault under Section 97-3-7(1) becomes

aggravated assault under Section 97-3-7(2) when done with a deadly weapon.  *Id*.  This is

completed when we realize that a subsequent subsection of simple assault includes negligent

injury to another with a deadly weapon.  *Id*.

¶20.   It is indisputable that the large kitchen knife Wilson used to stab Lisa and Michael was

a deadly weapon.  *See Id*. at 20.   Also there was no evidence presented that Wilson was

---

[2] Miss. Code Ann. § 97-3-7(1) states in part: "(1) A person is guilty of simple assault
if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to
another; or (b) negligently causes bodily injury to another with a deadly weapon or other means
likely to produce death or serious bodily harm."

negligent in the act of stabbing Michael twice, once in the leg and once in the forehead. Both of these injuries required medical attention. Just because the injuries failed to leave permanent and lasting effects on the victim does not mean that the case is automatically one of simple assault. *Id.* By stabbing Michael with a knife, Wilson's attack caused a great risk of death. This Court does not require that an aggressor beat his victim "to within an inch of his life in order to be found guilty of aggravated assault." *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992). Given these facts and the applicable standard of review, we cannot agree there was insufficient evidence to support the jury verdict or that to let it stand would sanction an unconscionable injustice. This argument is without merit.

## IV. JURY INSTRUCTIONS

¶21. Wilson asserts that the trial court erred in refusing to give his two-theory jury instruction. However, in claiming error, Wilson only cites generally to a series of cases, without explaining their relevancy. This Court has held that it is the duty of the appellant to point to relevant case law in support of his argument and that failure to do so relieves us of the obligation of addressing the issue. *Jones v. State*, 841 So. 2d 115, 138 (Miss. 2003); *Williams v. State*, 708 So. 1358, 1360-61 (Miss. 1998); *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982).

¶22. Notwithstanding the procedural bar, we address this issue. The trial court refused to give the following jury instruction:

The Court instructs the jury that if the evidence in this case presents two reasonable theories, one tending to indicate that the Defendant is guilty and the other tending to indicate that he is innocent, it is the jury's duty to accept the theory favorable to the Defendant and to find Kenneth Wilson, Jr., not guilty of the crime of murder.

Wilson asserts this jury instruction is appropriate in all cases and therefore should have been given in this case. He further argues that, because his theory of the case included an assertion of self - defense, the evidence presented against him was circumstantial therefore requiring this instruction.

¶23. This Court has stated that two - theory instructions should only be given in cases based entirely on circumstantial evidence. *State v. Rogers*, 847 So. 2d 858, 863 (Miss. 2003). We have defined circumstantial evidence as that which, without going directly to prove the existence of a fact, gives rise to a logical inference that such a fact exists. *Id*. A circumstantial evidence case is one in which there is neither eyewitness testimony nor a confession to the crime. *Id.* As is clear in this case there were several eyewitnesses and Wilson repeatedly confessed to the crime. Therefore, the trial court did not err in refusing this instruction.

## V.    CUMULATIVE ERROR

¶24.    Wilson asserts that the cumulative impact of the trial court's errors denied him due process and therefore requires reversal. A criminal defendant is entitled to a fair trial and not a perfect trial. *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985). However, even though not reversible in themselves, the cumulative impact of non-reversible errors may, in our discretion, require reversal. *Byrom v. State*, 863 So. 2d 836, 847 (Miss. 2003). In the present case

13

Wilson has been unable to show to this Court any error, either reversible or harmless. The lack of demonstrable error indicates that there is no need to consider its cumulative impact. Therefore, Wilson's argument is without merit.

## CONCLUSION

¶25.    We find no merit to Wilson's assignments of error and affirm the trial court's judgment.

¶26.    **COUNT 1: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.    COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS WITH FIVE (5) YEARS TO SERVE AND FIFTEEN (15) YEARS SUSPENDED UPON SUCCESSFUL COMPLETION OF FIVE (5) YEARS POST RELEASE SUPERVISION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.    SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED IN COUNT I.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**