## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01186-SCT

*RODNEY SANDS AND AQUI DEMETRIUS RHODES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/16/2009 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| | LESLIE S. LEE |
| | SHARON D. HENDERSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND RENDERED IN PART - 03/03/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Robert McInnis and Randolph Sands were shot and killed in the front circular drive of the Church of Christ near Prentiss, Mississippi. Rodney Sands and Aqui Rhodes were tried and convicted of manslaughter and murder, respectively; both were also charged with and convicted of the aggravated assault of a third victim, Jason McNair.

FACTS

¶2. Jason McNair, Randolph Sands ("Randolph"), and Roberto McInnis were drinking, smoking marijuana, and riding around Prentiss, Mississippi, and the surrounding communities with no particular purpose. Randolph was driving his Pontiac, McNair was in the front passenger seat, and McInnis was on the driver's side of the back seat. Randolph's older cousin, Rodney Sands ("Sands"), flagged them down, and Sands followed the three into the circular drive of the Church of Christ, and pulled up his Lexus on the passenger side of the Pontiac.

¶3. Everyone remained in their cars while, for ten to twelve minutes, Sands questioned the young men about their involvement in a recent break-in. Although they argued, the conversation never got heated.

¶4. Meanwhile, Aqui Rhodes noticed Sands parked at the church and decided to stop and talk with him. Rhodes had a .45 caliber pistol between the driver seat and the console of his Ford Explorer. He pulled in on the driver's side of Randolph's Pontiac, facing the opposite direction. Rhodes got out of his Explorer, leaned over the passenger-side window of Randolph's Pontiac, and immediately began accusing the three of burglarizing his home. McInnis, intoxicated and armed with a .40 caliber Kel-Tec pistol, became visibly agitated and threatening, and the conversation quickly became heated. During the argument, Sands remained at his vehicle.

¶5. According to McNair, Rhodes retrieved a gun from his car. Then, multiple shots rang out from the driver's side of Randolph's vehicle. McNair, who was still in the passenger seat, claimed the shots came from outside the Pontiac. Rhodes – claiming that McInnis had

shot at him first – admitted firing five or six shots at the Pontiac with his .45 caliber pistol. Police later were to recover six, .45 caliber projectiles, all fired from the same weapon: three from the Pontiac, one from the ground, and two from McInnis's body. Also recovered from inside the Pontiac were twelve shell casings, four .40 caliber and eight .45 caliber. Eight more shell casings were found on the ground; seven .45 caliber, and one .40 caliber.

¶6. McNair testified that, as he got down to avoid the gunfire, he saw Rhodes run toward the church, still firing at the Pontiac. He also noticed that Sands, who was crouched at the rear of his Lexus, had a "small black gun," but he never saw him fire it. Although McNair never testified that he saw Sands shoot the gun or point it at anyone, he did say "It was pointed."

¶7. Rhodes claimed he briefly saw Randolph jump out of the Pontiac and run. Randolph was later found across the road from the church, dead from two gunshot wounds. The two fatal wounds in his back had "tattooing," meaning the shots were fired at close, near-contact, range.

¶8. Rhodes and Sands left the scene. McNair – with McInnis in the back seat – went to the hospital emergency room. McNair was stabilized, and then flown to Forrest General Hospital for further treatment. McInnis was already dead, with two, .45 caliber projectile fragments lodged in his left rib cage.

¶9. Five days after the shooting, Sands turned himself in. Rhodes boarded a Greyhound bus and eventually ended up in Green Bay, Wisconsin, where he was arrested a year later for a separate offense. He was returned to Mississippi because of the pending charges stemming

3

from the shooting. Rhodes's vehicle was found almost two months later, but no weapons were ever recovered.

¶10. At trial, when asked on cross-examination about the use of marijuana, McNair admitted to "smoking blunts" with the two other victims as they were riding around. The State, on redirect, elicited testimony from McNair about drug use by Rhodes and Sands. Rhodes's counsel immediately objected to the "scope" of the question and was overruled. Sands's attorney raised no objection.

¶11. Following McNair's testimony at trial, the judge halted the proceedings to investigate an allegation of juror misconduct. Without stating how the issue was brought to his attention, the judge conducted a meeting in chambers with all parties present. He explained to them that he intended to conduct voir dire of each jury member individually and ask them two questions pertaining to their conduct during lunch. The response from each jury member was appropriate and the judge ruled it a nonissue. The defense made no motion for mistrial or any other mention of the alleged misconduct until the motion and hearing for a new trial.

¶12. At the hearing on the motion for a new trial, both Rhodes and Sands alleged juror misconduct. Sands's brother filed an affidavit and testified that he had seen juror Jackie Coleman walking and talking with Randolph's mother after lunch. There was no testimony as to what was said. The judge weighed this new evidence against his earlier decision to conduct a voir dire on the jury during trial and the answers he received. Then he denied the motion for a new trial.

## ANALYSIS

### I.  Sufficiency of the Evidence

#### A.  Rodney Sands

¶13.   A jury convicted Sands of two counts of manslaughter and one count of aggravated assault.  Sands argues that his motion for directed verdict should have been granted because there was no evidence that he fired a shot and no evidence to support the heat-of-passion element of manslaughter.

¶14.   When reviewing a challenge to the sufficiency of the evidence, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to meet a conviction.'"[1]

¶15.   The reviewing Court is not required to decide whether it thinks the State proved the defendant's guilt.  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

¶16.   If the facts and inferences "'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable

---

[1] ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005) (quoting ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)).

[2] ***Id***. (quoting ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)) (citations omitted).

doubt that the defendant was guilty,' then the proper remedy is for the appellate court to reverse and render."[3]  But if the evidence shows that reasonable and fair-minded persons, while considering the beyond-a-reasonable-doubt standard in the exercise of impartial deliberations, might have reached different conclusions on every element of the offense, then "the evidence will be deemed to have been sufficient."[4]

¶17.    To find Sands guilty on any of the counts of the indictment, the jury had to conclude from the evidence, beyond a reasonable doubt, that Sands had shot the victims.  And on the manslaughter charges, the State was required to prove that Sands had killed the victims without malice, in the heat of passion by use of a deadly weapon without authority of law, and not in necessary self-defense.[5]  The State argues that "there was ample evidence of defendant's being involved and firing shots," and such evidence is legally sufficient to uphold a manslaughter conviction.

¶18.    McNair, the only surviving victim, testified that he heard shots coming from Rhodes's side of the car, which, according to the evidence, was not in the same vicinity as where he momentarily saw Sands crouched at the back of his car, the Lexus.  McNair added that, after the shooting started, he looked again towards the Lexus and saw Sands at the back of the Lexus with a "small" gun, but he never at any point saw Sands shoot the weapon.

---

[3] *Id*. (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1983)) (citations omitted).

[4] *Id*.

[5] Miss. Code Ann. § 97-3-35 (Rev. 2006).

¶19. McNair's testimony that he had seen Sands crouched behind his car with a gun was the State's only proof that Sands shot anyone. This is wholly insufficient, and particularly so in light of the following evidence: All of the bullet fragments and shell casings found by law enforcement were either .40 or .45 caliber; all of the .40 caliber casings were traced to a single gun; McInnis was armed with a .40 caliber Kel-Tec pistol; all of the .45 caliber casings were traced to a single gun; Rhodes was armed with a .45 caliber gun; both McInnis and Rhodes had fired their guns.

¶20. Considering the evidence in the light most favorable to the verdict, this Court finds that the evidence was insufficient to establish that Sands shot anyone. Therefore, Sands's convictions must be reversed.

### B. Aqui Demetrius Rhodes

¶21. Rhodes was convicted of two counts of murder and one count of aggravated assault. Rhodes claims insufficient evidence was shown of the elements of "malice aforethought" and "deliberate design."

¶22. Section 97-3-19 of the Mississippi Code reads in pertinent part:

(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
(a) When done with deliberate design to effect the death of the person killed or any human being.[6]

¶23. It is undisputed that Rhodes did not have the authority of law, that both victims had been shot and killed with a firearm, and that Rhodes had shot his firearm multiple times at

---

[6] Miss. Code Ann. § 97-3-19 (Rev. 2006).

the victims. So the only question is whether the State presented the jury with sufficient evidence that Rhodes did so with deliberate design.

¶24.    Under Mississippi law, the terms "deliberate design" and "malice aforethought" are considered synonymous and both "connote an intent to kill."[7] This intent may be "formed quickly," even "moments before the act" and maybe inferred from the use of a deadly weapon.[8]

¶25.    McNair testified that the confrontation with Rhodes was based on an earlier break-in, and Rhodes had believed the victims were responsible. Additionally, both McNair and Rhodes testified that Rhodes had possessed and fired a gun.[9] The testimony on these two points, coupled with all reasonable inferences favorable to the prosecution, meet the standard for the "deliberate design" element.

¶26.    The State presented sufficient evidence on all elements of murder such that reasonable, fair-minded jurors could have found that the State proved these essential elements as to Rhodes, beyond a reasonable doubt. Based on the foregoing, we affirm the convictions against Rhodes.

---

[7] *Wilson v. State*, 936 So. 2d 357, 363-64 (Miss. 2006).

[8] *Id.*

[9] McNair testified that the shooting started from the driver's side of the car, where Rhodes was positioned, and he later testified that he saw Rhodes firing a gun. Rhodes testified that he shot his gun in retaliation.

## CONCLUSION

¶27. The jury did not have sufficient evidence before it to support the verdicts against Sands; therefore, we reverse the Circuit Court of Jefferson County on these counts and render. But we find that the jury had sufficient evidence to support the verdicts against Rhodes, and we affirm those convictions.

¶28. **AS TO RODNEY SANDS: CONVICTION OF TWO COUNTS OF MANSLAUGHTER AND ONE COUNT OF AGGRAVATED ASSAULT, REVERSED AND RENDERED.**

¶29. **AS TO AQUI RHODES: COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE POSSIBILITY OF PAROLE, AFFIRMED. COUNT II: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE POSSIBILITY OF PAROLE, AFFIRMED. COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IMPOSED IN COUNTS I, II AND III SHALL RUN CONSECUTIVELY TO EACH OTHER.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. KING, J., NOT PARTICIPATING.**