FAIR, J.,
for the Court:
¶ 1. “Joel” Gonzalez[1] was convicted by a Madison County jury of possession of five or more kilograms of marijuana. On appeal, he contends the trial court erred in admitting his confession and in allowing the prosecutor to cross-examine Gonzalez regarding his prior deportations. We find no error and affirm.
FACTS
¶ 2. Gonzalez was driving a four-door pickup truck north on Interstate 55 through Madison, Mississippi. Hé and his two passengers were pulled over by Madison Police Officer Paul Bunch, who was joined by other officers a short time later. Bunch had observed Gonzalez change lanes without signaling and cross over the fog line. Gonzalez gave permission to search the vehicle, and the officers discovered a false floor in the bed toolbox that was concealing fifteen bags of marijuana. The bags had been doused with seasonings in an apparent effort to defeat drug dogs. Gonzalez stated that the truck did not belong to him, but the drugs were his. At a subsequent interrogation, Gonzalez stated that the passengers “didn’t have anything to do with it.” Gonzalez wrote out a statement that said, in relevant part, “The 241bs of marijuana are mine.” The bags were later determined to weigh almost exactly twenty-four pounds.
¶ 3. At trial, Gonzalez changed his story. He claimed he had initially taken responsibility for the drugs because he felt guilty for the driving error that got them pulled over and because he was afraid of the real owner of the drugs, Antonio Mata, who was also the vehicle’s owner and a passenger when it was stopped.[2] Gonzalez claimed he did not know about the drugs in the vehicle until Mata told him as it was being searched — that was supposedly how Gonzalez knew there were twenty-four pounds of marijuana in the truck. Gonzalez also stated that his judgment was impaired because he had been using crack cocaine for four days without sleeping and had swallowed what he had left when he was pulled over.
*353 ¶ 4. The jury convicted Gonzalez, and he was sentenced to thirty years’ imprisonment. He appeals from that judgment.
DISCUSSION
1. Agee Rule; Suppression of Confession
¶ 5. Gonzalez claims the trial court erred in admitting his statement because, at the suppression hearing, the State failed to call one of the two police officers present when the statement was made. According to Gonzalez, his statement was involuntary because he was under the influence of cocaine when it was made. In response, Officer Bunch testified that Gonzalez did not appear to be intoxicated or confused. Joe Mangino, the other officer, testified to the same effect at the trial, but he was not called at the suppression hearing.
¶ 6. Gonzalez relies on Agee v. State, 185 So.2d 671, 673 (Miss.1966), where it was held that when “the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness.” He further cites to broad language in Lettelier v. State, 598 So.2d 757, 759 (Miss.1992), that Agee applies “where a defendant testifies to any fact which, if true, would tend to show that the confession was not voluntary.” (Quotation omitted).
¶ 7. This argument is without merit because Agee has been narrowed in more recent decisions of the Mississippi Supreme Court. “Only those officers claimed to have induced a confession by some means of coercion are required to testify at the hearing.” Wilson v. State, 936 So.2d 357, 362 (¶ 10) (Miss.2006) (citing Abram v. State, 606 So.2d 1015, 1030 (Miss.1992) (overruled on other grounds by Foster v. State, 961 So.2d 670, 672 (Miss.2007)). Wilson is instructive. There, the defendant claimed his confession was a product of duress caused by his emotional state and several self-inflicted stab wounds. Id. The supreme court rejected Wilson’s Agee argument because he “failed to name specific officers who coerced him or to cite specific examples of coercion.” Id. Gonzalez likewise fails to cite any acts of coercion by Officer Mangino.
¶ 8. Gonzalez also argues, in a cursory fashion, that the trial court’s finding that his statement was voluntary is against the overwhelming weight of the evidence. He offers no supporting authority, and this issue is therefore procedurally barred. M.R.A.P. 28(a)(6); Duncan v. State, 939 So.2d 772, 779 n. 3 (Miss.2006) (“[I]t is the duty of an appellant to provide authority in support of an assignment of error.”). Notwithstanding the procedural bar, we find no merit to this argument. We can reverse the denial of a motion to suppress “only if the trial court’s ruling is manifest error or contrary to the overwhelming weight of the evidence.” O’Hal-loran v. State, 731 So.2d 565, 570 (¶ 17) (Miss.1999). Having reviewed the record, we conclude that the trial court was entitled to accept Officer Bunch’s testimony that Gonzalez was alert and responsive over Gonzalez’s conclusory and uncorroborated claims of intoxication.
¶ 9. Gonzalez has failed to show any error in the admission of his confession.
2. Gonzalez’s Deportations and Prior Conviction
¶ 10. Gonzalez testified in his own defense, and the State moved in limine to cross-examine him regarding his prior convictions and deportations. The trial court largely prohibited this line of questioning, *354 but it did permit the State to elicit testimony that Gonzalez had been convicted of a felony in Indiana (without further elaboration) and that he had been deported to his native Mexico twice before. The trial court excluded the details of the Indiana conviction, which was for visiting or maintaining a common nuisance (essentially a drug house). See Ind.Code § 35-48^4-13 (2013). The court also precluded the prosecution from questioning Gonzalez about a federal conviction for kidnapping that resulted in his first deportation, because of the age of that conviction.
¶ 11. On appeal, Gonzalez complains that the evidence of his deportations was more prejudicial than probative under Mississippi Rule of Evidence 403 because it called the jury’s attention to his status as an illegal alien. He also contends the pri- or felony conviction should not have survived the balancing test.
¶ 12. Gonzalez filed a motion in limine before the trial to preclude any mention of his immigration status. However, his attorney withdrew the motion, stating that he had changed his strategy. Gonzalez’s theory of the case was that he initially took the rap for the drugs because he believed he would be imprisoned for only a short time before being deported. In his opening statement, Gonzalez’s attorney stated:
Mr. Gonzales didn’t know before this. Mr. Gonzales is high on cocaine. He’s sleep deprived. He feels responsible for the stop. He feels that his friends are about to get in a lot of trouble because of a mistake, the driving mistake, and he believes that if he confesses to the marijuana, to putting it in the truck, that he’ll be just deported. Now this is not the case, but that’s what he believes in the state of mind that he’s in at the time. So he makes a confession, a false confession. He thinks he’s trying to help his friends and he thinks that very little will come of it for him. He thinks he’ll be sent back to Monterrey, Mexico.
Gonzalez also used his fear of immigration enforcement to explain why he had initially given the authorities an alias and corresponding (apparently forged) identification cards from Mexico. Both Officers Bunch and Mangino testified without objection that Gonzalez had expressed his belief he would not be imprisoned long before being deported.
¶ 13. Certainly his immigration status and prior history of deportation could have been a double-edged sword in the trial, but having made the tactical decision to open that door himself, Gonzalez cannot now complain of prejudice.
¶ 14. As to the prior conviction, Mississippi Rule of Evidence 609(a)(1)(B) provides that a defendant who chooses to testify may be impeached with evidence of his prior convictions of crimes punishable by death or imprisonment in excess of one year, provided certain conditions are met, including that the court determines that the probative value of the conviction as evidence outweighs its prejudicial effect. The trial court must hold a hearing pursuant to Peterson v. State, 518 So.2d 632, 636 (Miss.1987), and consider:
(1) The impeachment value of the prior crime.
(2) The point in time of the conviction and the witness’ subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant’s testimony.
(5) The centrality of the credibility issue.
¶ 15. Here, the trial court held a Peterson hearing and found the prior conviction admissible. Gonzalez’s testimony and credibility was unquestionably central *355 to the case, where the only seriously contested issue was the ownership of the drugs. And to mitigate the prejudice, the trial court precluded the State from mentioning the nature of the conviction — i.e., that it was drug-related. The standard of review for admission or exclusion of evidence is abuse of discretion. Herring v. Poirrier, 797 So.2d 797, 804 (¶ 18) (Miss.2000). Given this deferential standard, we cannot say the trial court erred in admitting Gonzalez’s prior conviction for impeachment. This argument is without merit.
¶ 16. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF FIVE OR MORE KILOGRAMS OF MARIJUANA AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. Gonzalez was indicted as "Joel Gonzalez,” a name the Mississippi authorities acquired from a fingerprint database. Gonzalez admitted to using several aliases not included in his indictment, including Martin Sandibar (the name he gave the arresting officers in this case) and Jose Gatten. He testified that his given name is Jose Pablo Gonzalez and suggested "Joel” was a transcription error.

. The authorities later determined that the vehicle was actually owned by someone they believed was Mata’s wife.