406 So.2d 795 (1981)
Malcolm Joe DAVIS
v.
STATE of Mississippi.
No. 52659.
Supreme Court of Mississippi.
September 9, 1981.
Opinion Modified On Denial of Rehearing December 16, 1981.
*796 F. Kent Stribling, Dixon L. Pyles, Pyles & Tucker, Jackson, David R. Smith, Smith, Smith, Tate & Stuart, Poplarville, for appellant.
Bill Allain, Atty. Gen. by Mark A. Chinn, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PATTERSON, Chief Justice, for the Court:
In the Circuit Court of Pearl River County, Malcolm Joe Davis was tried and convicted of rape and sentenced to thirty years in the Mississippi Department of Corrections. Davis appeals, assigning several errors.
1. The failure of the court to grant the defendant a speedy trial violated his constitutional rights under Amendment VI of the United States Constitution, aggravated his mental condition because the prolonged incarceration prior to his trial was unduly oppressive, maximized his anxiety and concern which accompanied the public accusation of the appellant, and greatly impaired his ability to defend himself.
2. The conduct of the trial judge amounted to an intrusion into the jury's fact finding role because it structured the verdict of guilty; it relieved the state of establishing "beyond a reasonable doubt" the charge against the defendant in the indictment; and it shifted to the defendant the burden of persuasion of his innocence.
3. The defendant's rights under Amendments VI and XIV of the Constitution of the United States and under MCA § 13-5-2 (1975) were violated by the failure of the state to select the special venire from a fair cross section of the population of Pearl River County.
*797 4. The procurement, use and admission into evidence of the several involuntary confessions deprived the defendant of the essential elements of due process guaranteed by Amendment V of the United States Constitution, of the right to the effective assistance of counsel in violation of Amendment VI of the United States Constitution, and of the protection afforded by the "Mississippi Criminal Rules of Circuit Court Practice."
5. Davis' right to a fair trial under Amendments V, VI, and XIV of the United States Constitution were abrogated by the trial court's actions:
(a) in refusing to grant a mistrial on the motion of the defendant when Mason Sistrunk, a witness for the state, purposely exhibited, displayed and exposed certain prejudicial objects to the jury before the objects were admitted into evidence; and, thereafter, when the state failed to offer the prejudicial objects into evidence, denying the defendant the right to cross-examine the witness and procure testimony favorable to the accused;
(b) in refusing to grant a mistrial when the assistant prosecutor was allowed over objection to argue and comment on the failure of the defendant to testify in his own behalf;
(c) in refusing to grant the motion of the defendant to dismiss and discharge him at the conclusion of the state's case when the proof of the elements of the corpus delicti were wholly lacking, and again refusing at the conclusion of the trial to dismiss and discharge the defendant;
(d) in refusing to sustain the objections of the defendant to certain testimony of the state, and in sustaining the objections of the state to the evidence of the defendant.
6. The court abused its discretion in permitting Sheriff L.W. Holliday to serve as a bailiff and remain in the courtroom to hear the testimony of other witnesses and mingle with the other witnesses in the witness room, and in permitting him to testify over the objection of the defendant after all witnesses had been placed "under the rule" at the outset of the trial.
The prosecutrix, on the morning of March 9, 1979, was raped, after a struggle, in her home by a man wearing knee-high stockings over his head and hands. After the rape the man led the prosecutrix into the bathroom and made her take a douche. After he left, the prosecutrix went to her husband's office and with him to the police. She identified her assailant in court as Malcolm Davis, a man who had been to her home to repair the washing machine on a previous occasion. There were witnesses who recalled seeing, just before the time of the rape, Malcolm Davis walking near the prosecutrix' home and his truck parked in the vicinity of the home. Four knee-high stockings were found under a bridge near the prosecutrix' house. The containers were found in Davis' truck. A checkout girl in a local market recalled selling the stockings to Davis a few days before the rape.
Davis was taken into custody about 1:50 p.m. on March 9, 1979. Although Davis was advised of his Miranda rights, he signed a waiver of those rights and requested counsel. Deputy Sistrunk phoned Davis' attorney and Davis conferred with him over the phone. Some interrogation was continued that afternoon, but no prejudicial or incriminating statements were obtained from Davis, although Deputy Sistrunk later testified at trial that at some time in the afternoon he encouraged Davis to cooperate. Sistrunk testified:
... If you will talk to us, we'll cooperate with you every way we can, and I told him, I said, "Do you want a lawyer, there's the phone. I'm not going to be hostile to you in anyway." I have a tendency to talk boisterous to people. That's my nature, and a lot of people take me wrong in doing that, but I'm known to be loud, and I was possibly was loud with him. I'm always loud.
... .

*798 ... I told him it would be best. It would make it lighter on yourself. I always feel that way.
At 11:00 p.m. on the same day, Sheriff Holliday and Auxiliary Deputy McCaleb talked with Davis when he was again advised of his rights and again signed a waiver of those rights. From this questioning, the sheriff obtained two signed statements from Davis admitting the rape. Sheriff Holliday testified that Davis did not make a request to contact his attorney, explaining as follows: "Whenever I read him his rights, and he signed that waiver of rights, he told me that he had spoken to his attorney, but he was still willing to talk to me at that time." Davis was indicted for rape on March 16, 1979, and arraigned on November 15, 1979. Trial began April 10, 1980.
Although Davis assigns numerous errors in the trial court, we are of the opinion only five of these errors warrant discussion as the remaining errors are believed to be without merit.
First, Davis contends the trial court failed to grant a speedy trial, violating his sixth amendment rights. Specifically, Davis asserts undue delay from the time of indictment, March 16, 1979, to the time of arraignment, November 15, 1979, and to the time of trial, April 10, 1980.
On April 3, 1980, Davis filed a motion to dismiss the indictment based on the state's failure to bring him to trial within the 270 day time period of MCA § 99-17-1 (Supp. 1980). This motion was overruled because the delay was the result of continuances granted.
We are of the opinion there was no untimely delay between the arraignment and trial date. MCA § 99-17-1 (Supp. 1980) provides that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."
Since the time prior to arraignment is not computed to determine compliance with this statute and less than 150 days passed between the date of arraignment and the date of trial, we conclude the State adequately met the 270 day limitation as set forth in § 99-17-1. See Speagle v. State, 390 So.2d 990 (Miss. 1980).
Moreover, the delay of 150 days is not unreasonable in view of the fact that the court below has two terms of criminal court each year, the March and November terms. Defendant cannot be heard to complain about the first continuance from the March 1979 to the November 1979 term because defense requested it to complete psychological tests of defendant. The State requested and was granted the continuance from the November 1979 term to the March 1980 term, so this delay was not incurred by the defendant; however, the continuance, in our opinion, was not unreasonable because the trial court found the District Attorney was required to be before the grand jury the entirety of that term and there were no assistant district attorneys to try the case at this term. Although the appellant now contends that he objected to this continuance we are unable to find any support for it in the record. We, therefore, think both continuances were necessary and reasonable and within the sound discretion of the trial judge and surely not violative of MCA § 99-17-1 (Supp. 1980), which permits continuances for good cause, as here.
Turning to the eight month delay from indictment to arraignment, Davis asserts it was the custom of the trial judge not to arraign criminal defendants unless they were to be tried at the term. Again there is no evidence of this in the record. We, therefore, are of the opinion the delay did not infringe on Davis' constitutional right to a speedy trial. We emphasize, however, the importance of early arraignment within a reasonable time. Although there is no evidence in the record to support the argument, the procedure of arraigning criminal defendants at the term set for trial, if true, has the potential to violate the defendant's right to a speedy trial through the four prong balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 101 (1972), and adopted in *799 Wells v. State, 288 So.2d 860, 862 (Miss. 1974), namely: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."
Presently, on balance, we are unable to state there was error in not dismissing the indictment. Although there was some testimony that the appellant's incarceration contributed to both his mental and physical deterioration, it was not conclusive upon the trial judge as he had other factors to consider in conjunction with it, such as the appellant's physical appearance and demeanor, the testimony of the deputies and the sheriff as to the appellant's mental and physical condition. We, therefore, are of the opinion the appellant's right to a speedy trial was not violated.
Davis also assigns as error the admission into evidence of the two signed confessions. There are two aspects of the admission of these statements which are troublesome, whether they were voluntarily given and whether there was an intelligent waiver of counsel.
The Pearl River County deputies and the sheriff testified in the suppression hearing concerning the arrest and questioning of Davis that no threats, coercion, or promise of reward was made to him. The trial judge ruled the confessions voluntary and thus admissible. After the suppression hearing and during the case-in-chief, Deputy Sistrunk stated on cross-examination by defense counsel that he had told Davis on the afternoon of March 9, 1979, that it would be best if he would cooperate, that it would be lighter for him. No objection to the introduction of the confession was made at that time based on the ground that, "it would make it lighter on yourself." The point was not raised until Davis moved for a new trial after the verdict.
In Stubbs v. State, 311 So.2d 339, 342 (Miss. 1975), we stated "[t]he trial court correctly held after preliminary inquiry that the confession was competent evidence and in the absence of a motion to exclude during the course of the trial, the testimony of the appellant only went to the weight and credibility of the confession." In Stubbs, a police officer had testified at a preliminary hearing that the defendant made a voluntary confession without threat, promises, or inducement. The defendant offered no evidence to refute the voluntariness of the confession. Thus the trial court admitted the testimony concerning the statement into evidence. In the trial-in-chief the defendant testified that he had requested the presence of his attorney during the questioning in which he made the statement, and this request was denied. However, the defendant made no motion to exclude the testimony of the officer concerning the confession. This Court, finding no error in the admission of the confession at the hearing, held the defendant's testimony applicable only to the weight and credibility of the confession. Similarly, in this case, absent a contemporaneous motion to exclude during the trial, the objection to the admission of the confession was waived.
Davis cites a recent U.S. Supreme Court case, Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), as determinative of error in the admission of Davis' confessions. The Edwards case involved an oral confession of a man charged with murder. Edwards was arrested on January 19, 1976, and informed of his rights. After being told that another suspect had implicated him in the crime, Edwards indicated he wanted to "make a deal." After speaking briefly with the county attorney Edwards requested counsel. Questioning then ceased until the next morning when two detectives came to talk with Edwards. The jail guard informed him that the detectives wished to see him, but Edwards indicated that he did not want to talk to anyone. The guard then told Edwards that "he had" to talk with the detectives and took him to meet them. After the detectives read Edwards his rights, an oral confession was obtained from him. The U.S. Supreme Court held that Edwards had not made a valid waiver of his right to counsel, stating:

*800 ... and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. Id. at 484, 101 S.Ct. at 1884. (Emphasis added)
The circumstances in this case parallel rather closely the facts of Edwards, but with some significant differences. Both cases concern a second police-initiated interrogation, but here Davis made an express waiver of his right to remain silent while Edwards evidenced opposition to the interrogation. Moreover, in Edwards the second interrogation occurred before counsel had been made available to him. Yet here Davis' request for counsel was immediately complied with during the afternoon interrogation. The officer telephoned Davis' attorney and permitted him to speak with the attorney. After talking with the attorney, Davis reported to the officer that the attorney would come to the sheriff's office that afternoon and confer with him; however, the attorney did not come to the sheriff's office that afternoon and did not confer with Davis that date except in the telephone conversation. Some nine hours later the sheriff and a deputy talked with Davis and obtained his confession. Although this interrogation was initiated by the sheriff, Davis was advised of his rights and waived them. Davis told the sheriff he had spoken to his attorney, but he was still willing to talk to the sheriff at that time. We conclude that after Davis' counsel failed to appear in the afternoon, he willingly waived the presence of counsel and willingly answered questions of the sheriff. Comparison of these cases reveals both access to counsel and an express willingness to talk in this case which were not present in Edwards.
In Edwards the Court emphasized that "the voluntariness of ... an admission on the one hand, and a knowing and intelligent waiver on the other, are discreet inquiries." Id. at 484, 101 S.Ct. at 1884. The error in the Edwards' case, as we view it, lay in the state courts' failure to focus on whether Edwards intelligently and knowingly relinquished his right to counsel. Here the trial court in ruling on the motion to suppress made specific findings as to both voluntariness and knowing and intelligent relinquishment of rights.
The Edwards Court stressed throughout the opinion that the Court was not abandoning prior decisions, rather reconfirming and emphasizing the importance of the Miranda safeguards surrounding an accused's right to counsel. In considering the factual distinctions between these two cases it appears to us that Edwards is not presently controlling because the record reveals that Davis' constitutional right to counsel was meticulously protected as required by Miranda and Edwards. We, therefore, think this assignment of error is without merit.
Davis next contends he was denied a fair and impartial trial by the failure of the State to establish the corpus delicti of the crime. The crime of rape consists of a person having carnal knowledge of a woman over the age of 12, against her will. MCA § 97-3-65 (Supp. 1980). Thus, it is necessary that both aspects of the act  carnal knowledge and force  be proved by the State.
The prosecutrix testified that the defendant after pulling a pillowcase over her head "turned me over and forced me to have sexual intercourse. What I mean by sexual intercourse is he forced his penis into my vagina." This Court has stated "that the testimony of the victim of a rape may be sufficient to support a guilty verdict where the victim's testimony is neither contradicted nor discredited by other evidence or by surrounding circumstances." Dubose v. *801 Mississippi, 320 So.2d 773, 774 (Miss. 1975). The testimony of the prosecutrix was corroborated by witnesses who knew Davis and saw him, as well as his truck, in the vicinity of the prosecutrix' home at the time.
The prosecutrix also testified the sexual intercourse with Davis was against her will, stating that she struggled with him, was pushed to the floor, that she screamed, and was threatened with harm if she didn't cooperate. Although no signs of external injury or sperm were found, the presence of either is not considered absolutely determinative of rape. "The rule is that physical force on the part of the assailant, or physical resistance on the part of the victim, is not necessary if the proof shows beyond a reasonable doubt that the female surrendered because of fear arising out of a reasonable apprehension of great bodily harm." Fields v. State, 293 So.2d 430, 432 (Miss. 1974). The testimony of the prosecutrix evidenced a reasonable apprehension of bodily harm. The examining physician testified that his examination was complicated by the douche and by menstrual bleeding. All that was necessary for the crime was "some penetration of the female's private parts by the sexual organ of the assailant." Lang v. State, 230 Miss. 147, 158, 87 So.2d 265, 268 (1956). The testimony of the prosecutrix, corroborated by the surrounding circumstances and other evidence, was sufficient, in our opinion, to prove the corpus delicti of the crime.
The appellant also contends there was reversible error because the trial court refused to grant a mistrial when the assistant prosecutor in the closing argument was allowed to comment on the failure of the defendant to testify in his own behalf. Since defense counsel did not preserve the closing argument for the record by a bill of exceptions or otherwise, we must assume the court's ruling in this regard correct. The trial court dictated into the record the following:
Let the record show that the Assistant Attorney was arguing the case, and in his argument of speaking of the times that the statements were made by the defendant and in reference to those statements, he made the statement that all the defendant had to do at that time was deny that he had committed the offense. Upon him stating that, the defense attorneys have now moved the Court for a mistrial. The Court finds that the statements made by the Assistant District Attorney were made in regard to 9 March, '79, and in the early morning of 10 March, 1979, and in conjunction with the statements that were made to the Sheriff and the other witness at said time and place and were not in any manner referring to any other time, place, circumstance or situation, and for this reason, the motion be and the same is hereby overruled.
If the attorney's statement could reasonably be construed by the jury as a comment on Davis' failure to testify, then it would be immaterial that the attorney intended to refer to a situation other than the trial-in-chief. Reddick v. State, 72 Miss. 1008, 16 So. 490 (1895). Without the precise words of the argument or the context in which it was made, we have difficulty in determining a reasonable construction of the statement or in determining possible prejudicial effect on the jury's verdict. In this situation we must assume the trial court properly resolved the question as indicated by his above statements. In reaching this conclusion we note the testimony that Davis first denied his participation in the crime but later confessed, a fact which possibly evoked the comment. Nor do we have, as did the trial court, the benefit of defense counsel's argument which might have prompted the comment of the assistant district attorney in reply. In any event we have long declined to rule on matters not preserved in the record in sufficient detail for purposes of appeal. Shelton v. Kindred, 279 So.2d 642 (Miss. 1973). Thus, we conclude this contention to be without merit.
Finally the appellant contends that he was greatly prejudiced by the sheriff's presence in the courtroom after the rule had been invoked, particularly since the *802 sheriff was a witness in the case. While it is true that Davis objected to the sheriff's presence after the rule had been invoked, nevertheless the sheriff was exempted by the court because he was needed in the courtroom. The judge gave the following explanation:
... [D]uring most of this trial, because of the other deputies being under the rule, the Sheriff has been the only law enforcement official in the Courtroom and available to the Court and has been performing his normal duties as Sheriff during the trial of this cause.
There is no suggestion by the defendant, as we view the record, that the sheriff acted with any impropriety, the only contention being that he must have heard the other witnesses testify; and therefore, we suppose, in some fashion not pointed out, either altered his testimony or by his very presence prejudiced the jury. We do not ascertain from our research of the record or from this argument that the trial judge in any way abused his discretion in permitting the sheriff to remain in the courtroom. Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965). The present factual situation does not rise to the proportions of those in Dunn v. State, 264 So.2d 823 (Miss. 1972), Perkins v. State, 244 So.2d 414 (Miss. 1971), or Smith v. State, 251 Miss. 241, 169 So.2d 451 (1964).
We have meticulously examined the other assignments of error and find them without merit. In sum, the record reveals sufficient credible evidence to support the jury's verdict and there being no prejudicial error in the record in our opinion, the cause is affirmed.
AFFIRMED.
SMITH, and ROBERTSON, P. JJ. and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
HAWKINS, J., dissents.
HAWKINS, Justice, dissenting:
Respectfully, I must dissent.
Mississippi Code Annotated § 13-1-9 (1972) requires, and this Court has held in numerous decisions, that no comment whatsoever shall be made upon the defendant's failure to testify in a case. We have gone further and held no comment can be made which could be construed by the jury as a comment on failure by the accused to testify. Brown v. State, 340 So.2d 718 (Miss. 1976); Lambert v. State, 199 Miss. 790, 25 So.2d 477 (1946); Reddick v. State, 72 Miss. 1008, 16 So. 490 (1895).
As this Court stated in Prince v. State, 93 Miss. 263, 46 So. 537 (1908), the jury cannot avoid being keenly cognizant of the defendant's failure to testify, and the defendant being manifestly the one person most interested in the outcome of the case, the jury can only wonder why he did not testify. To make any kind of comment that can be construed as a statement to the jury as "Well, if he was not guilty, he could have denied it," can only result in serious prejudice to the defendant's statutory and Constitutional rights under the Fifth Amendment to the Constitution.
The Court stated in pertinent part:
... The Assistant Attorney was arguing the case, and in his argument of speaking of the times that the statements were made by the defendant and in reference to those statements, he made the statement that all the defendant had to do at that time was deny that he had committed the offense.
For twelve jurors under those circumstances to restrict their thoughts solely to the defendant's statements to the law officials, and not also instantly be alerted by this comment the defendant could have denied his guilt as a witness from the witness chair, each would first require a lobotomy. In my view, the statement by the assistant prosecutor can only be construed as a comment on the failure of the defendant to testify.
This Court has taken pains so often to warn and urge prosecuting attorneys to refrain from any comment of this nature. It is also probably true that most cases of this nature never reach this Court because the *803 trial judges as a rule declare a mistrial on the spot. That, at least, has been the experience of the author of this dissent, as a district attorney and an observer of criminal trials over the years. In this particular record, with the proof of the guilt of the defendant so strong, it was as strange as it was unnecessary to make the comment made by the state.
The learned trial judge in this case I am sure did everything possible to prevent the unfortunate inference being impressed upon the jurors' minds, but I think the inference inescapable and unavoidable.
I specially concur with the majority opinion relative to the confession of the defendant. Ordinarily, any statement made by a law enforcement officer to an accused, as was made in this case, that it would be better for him to cooperate and "it would be lighter for him," would taint the admission or confession and render it totally incompetent. Citation of authority is unnecessary to this well-settled proposition of law.
In this case, however, the revelation that such a promise had been made to the accused was first elicited from the officer during the trial by defense counsel on cross-examination. Yet, counsel made no objection, no motion to exclude the confession, and the first we learn of his taking umbrage from such disclosure was in the motion for a new trial. We can only assume defense counsel either approved or was unperturbed. To wait until the jury has returned a verdict of guilty before voicing any complaint was somewhat late, and the accused thereby clearly waived a definite right that he once had to object.