# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01502-SCT

*EDWARD LAMONT NEAL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2009 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: BENJAMIN ALLEN SUBER |
| | LESLIE S. LEE |
| | GARY GOODWIN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/17/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Edward Lamont Neal appeals from his conviction for the burglary of Robert Peterson's home. Neal asserts that he was denied his constitutional right to counsel when a police investigator continued to interrogate him after he asked to call his lawyer. Thus, he argues that his custodial confession was inadmissible, as his subsequent waiver was invalid. Neal also asserts that he was prejudiced by the trial court's admission of evidence referring

to the investigation of another crime. We find no abuse of discretion by the trial court on either issue.

**FACTS**

¶2.     Peterson returned to his home in east Columbus after fourteen hours at work on September 6, 2006, at approximately 6:30 p.m. He found his house ransacked "like a tornado had gone through" and called 911. Officers from the Columbus Police Department ("CPD") arrived twenty to thirty minutes later. They observed splintered wood and broken glass at the back-door entry. Missing from the house were two jars of change containing between $60 and $80. Subsequently, Peterson received a telephone call from a friend that Neal (a person unknown to the victim) had been seen near the victim's home carrying a jar of coins. Peterson furnished the CPD this information.

¶3.     Detective Samuel Jackson was called to the scene and found blood in the house and on the cabinets and floors. He recovered a sample to obtain DNA evidence. He located a prying device or bar, and a cleaning-solution container near the house. Jackson received a phone call from Peterson reporting that Neal had been seen near his house with a jar of coins. Neal was later observed by another CPD officer with a bandage on his hand. Neal was stopped and asked how he got cut. He replied "broken glass." CPD obtained medical records from a local hospital for September 6, 2006, to determine if Neal had been treated that day. Medical records confirmed that Neal had been treated on September 6, 2006.[1]

---

[1] A registered nurse from the hospital testified at trial that Neal gave a history of having cut his hand on a broken windowpane. X-rays revealed glass in the wound. He was at the hospital from approximately 12:30 p.m. until 4:00 p.m.

¶4.    Neal, who was on probation,[2] also became a suspect in the robbery and shooting of an eighty-three-year-old man.[3] McLemore asked Neal to come to the CPD. Neal, along with his mother, voluntarily appeared at the CPD per the officer's request. He was questioned regarding the December robbery and shooting. Jackson also was at the CPD that day. Jackson advised Neal that DNA evidence could either implicate or exclude him as a suspect in the burglary. Neal did not claim the officers made any promises or threats to him. Neal agreed to provide a cheek swab and gave written and videotaped consent. After providing the swab, Neal left the police station with his mother. This sample was taken on December 14, 2006.

¶5.    The same day, Neal reported to his probation officer. The record is silent as to what transpired, other than that Neal escaped from the custody of a Mississippi Department of Corrections officer and was later charged with felony escape. On December 18, 2006, an arrest warrant for felony escape was issued. Neal was found on the streets of Columbus on January 16, 2007, at which time he was arrested on the felony-escape charge. The warrant

---

[2]Neal had pleaded guilty on August 22, 2006, to felony malicious mischief and had received a five-year sentence, which was suspended. He was placed on probation.

[3]On December 8, 2006, S. H. Livingston was robbed after being threatened with a pistol and then later shot in both legs with a shotgun. Investigation by Officer David Criddle and Lieutenant Wayne McLemore led them to suspect Neal. On May 4, 2007, Neal was indicted for three crimes. Counts 1 and 2 (related to the robbery and aggravated assault of Livingston) were severed from Count 3 for the burglary of Peterson's home. McLemore and Criddle were the primary detectives on the robbery and aggravated-assault charges. Detective Jackson led the investigation of the burglary.

3

was served on him on January 19, 2007. In the interim, the DNA report had been returned, confirming that the DNA from the blood at the scene matched the swab obtained from Neal.[4]

¶6.    Neal's initial appearance on felony escape was January 19, 2007. Neal was informed of his rights by the municipal court judge. A form, "Certificate of Initial Appearance," documented the initial appearance and that Neal was "Informed of Right to Remain Silent; Informed of Right to an Attorney; Informed of Right to Communicate; Informed of Right to a Preliminary Hearing or to the Right to Waive that Preliminary Hearing; and, Informed of Right to have or not have Bail." A preliminary hearing was scheduled for February 1, 2007, and bail set at $5,000. Each of these rights was checked on the signed form, including the defendant's request for a court-appointed attorney. The form was signed by both Neal and the municipal court judge. Neal was returned to jail.

¶7.    The investigation of the other crimes continued. On January 24, 2007, Neal was moved from the Lowndes Detention Center (jail) to the CPD for questioning on the burglary, robbery and shooting, and to be served with arrest warrants for those crimes. A video showed that Neal was taken to an interview room. The video began with Neal demanding to be taken back to jail. Neal was left alone in the room, where he sang to himself for a while. Then a police officer entered, asking Neal, "What's up?" Neal repeatedly replied, "Nothing, nothing." Neal asked, "Why you lock me up, what did I do?" The police officer advised him that he was in jail because of felony escape. Neal replied, "I'll beat that charge, maybe serve a couple of years." Then Neal said, "The reason I ran was that you have me

---

[4]At trial, the physician director of the DNA lab testified that the chance that the blood and swab matched someone other than Neal was one in 999,000,000,000,000.

4

locked up for no reason. I've been locked up on bogus charges. I may need a lawyer. Matter of fact, I've got one." After the police officer reminded Neal that he had been charged with felony escape the following exchange took place:

Neal: I can call my lawyer for to come up here while we talk?

McLemore: You can talk to me if you want to. It doesn't matter.

Neal: I want to call my lawyer.

McLemore: You want to call your lawyer?

Neal: Yes, sir.

A paraphrase of the officer's next several statements includes: (1) If you want to talk, then grab your attorney; (2) I want you to call your attorney; (3) I'll tell you what you can explain to your attorney. The police officer then left the room for a little more than a minute. When he returned, Neal stated, "I won't sign no papers." The police officer replied, "Well get your lawyer and we'll talk in court." He then showed Neal warrants for burglary, kidnaping, and aggravated assault with a weapon, and stated that the two years Neal was talking about was going to go to forty. Neal replied that he wanted to see the evidence. At the conclusion of this approximately two-minute conversation, Neal requested to be taken back to jail. The officer replied that he would process Neal on the new charges before he returned him to jail. Neal was then left in the room alone for approximately four minutes. At 12:40 on the tape,[5] the police officer reentered the room and stated, "I've looked it up for you." Neal replied, "Don't sign nothing." The officer then told him the maximum sentence for each of the new

---

[5]These time markers represent the minutes and seconds elapsed on the videotape (total running time, 27:24). The record does not reveal the time of day, except that it occurred on January 24, 2007, prior to 3:30 p.m.

5

charges. Neal replied, "I understand," proclaimed his innocence, and stated, "You still got the wrong person." The police officer replied, "Have you heard of DNA?" Neal asked, "You got my DNA on burglary?" and then accused the police officer of smoking something. Neal also stated, "I don't steal." At the 15:40 mark, the officer again left the room and did not reenter until 22:30. On reentering, the officer sat down writing at a desk, and made no statements or asked any questions. The silence lasted until the 24:35 mark. The officer then stated, "We're going to get you in front of the judge, set bond and a court date. Any questions?" Neal shrugged his shoulders. The officer left at 25:05. At 27:15, the officer reentered and said, "Come on, let's go across." Later evidence showed that "let's go across" meant going from the interview room through a long hallway over to the municipal court. Neal was again advised of his rights by the municipal court judge. Neal was formally charged with the three crimes.

¶8. The versions of what happened off video vary. The police officers stated that, after coming out of the court hearing, Neal saw Eric Lewis, a narcotics-unit officer, in the hallway and asked to speak with him. Also in the hallway was Lewis's supervisor, Commander John Pevey. Lewis was advised by McLemore that Neal had invoked his rights. Neither Lewis nor Pevey initiated the conversation. Neither knew the facts of the charged crimes. Both testified they only responded to Neal's questions. Neal spoke for a short time with Lewis,[6] and was then returned to the custody of McLemore and Criddle. The three exited the building and got in a car to return to the jail. The officers testified that Neal then said he wanted to talk to them. They returned inside, and another video, more than an hour long,

---

[6]At trial Neal said his discussions with Lewis were about "drug" activity.

6

recorded those discussions. The tape opened with Neal talking about the robbery. The officers asked no questions, but they repeatedly interrupted Neal, stating they needed to *Mirandize* him. *See Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). After stating his rights, they obtained an oral waiver and a signed waiver.

¶9. Before the waiver, the officers had asked no questions, and Neal had made no statements related to the burglary of Peterson's home. Immediately after signing the waiver, Neal volunteered, "And where that burglary was in east Columbus, I plead guilty to that burglary. I did that burglary." Later in the video, Neal discussed the details of the burglary. A redacted version of this video (related only to the burglary charge) was admitted into evidence. The redacted video exhibited to the jury was approximately five minutes long.

¶10. Prior to trial, two motions to suppress were filed, one by counsel and the other *pro se*. Neal's counsel sought to suppress: (1) hospital records; (2) consent to cheek swab; and (3) the January 24, 2007, statements. Counsel's motion alleged Fourth- and Sixth-Amendment and *Miranda* (Fifth-Amendment) violations of the United States Constitution. The *pro se* motion sought to suppress: (1) hospital records and DNA-testing results, and (2) the January 24, 2007, statements to the CPD. The *pro se* motion specifically alleged violation of Neal's Fourth-, Fifth-, Sixth-, and Fourteenth-Amendment rights accorded by the United States Constitution. One-third of the record is devoted to the suppression hearing. The trial court considered Fifth- and Sixth-Amendment claims, before denying the motions to suppress the statements. Of these, Neal contests on appeal only the admission of the confession, which led to the other issue appealed. Following admission of the confession, Neal attempted to

7

explain away the confession by referencing another crime, robbery, about which he also was being interrogated.

¶11.    At trial, faced with his DNA at the scene, Neal offered a completely different version of the burglary.  Neal testified that he and another person had gone to Peterson's home the morning of September 6, 2006, to confront him regarding a woman.  He continued that, after tricking Peterson to allow them to enter, Neal and the other person proceeded to "jump on" Peterson.  Then, according to Neal, he and his accomplice trashed the house.  Neal said he cut himself during this time.

¶12.    The State offered rebuttal evidence, *inter alia*, through Peterson's employer, that the victim was at work from 4:00 a.m. until 6:00 p.m., and that Peterson was provided only a twenty-minute lunch break.  From Peterson's home to his place of work was approximately a thirty-minute drive.  The jury, after having considered all the evidence, found the defendant guilty of burglary.

¶13.    The issues, as presented by the appellant, Neal, are:

I.    The trial court erred by not suppressing the videotaped confession of the appellant.

II.    The appellant was irreparably and unfairly prejudiced when character evidence of an aggravated assault, other wrongs, acts, or other unrelated crimes were referenced by the prosecution in the presence of the jury.

## STANDARD OF REVIEW

¶14.    "Findings by a trial judge that a defendant confessed voluntarily, and that such confession is admissible are findings of fact."  *Davis v. State*, 551 So. 2d 165, 169 (Miss. 1989).  "As long as the trial judge applies the correct legal standards, his decision will not

be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." ***Chamberlin v. State***, 989 So. 2d 320, 331-32 (Miss. 2008). "This Court will reverse a trial court's denial of a motion to suppress only if the ruling is manifest error or contrary to the overwhelming weight of the evidence." ***Barnes v. State***, 30 So. 3d 313, 316 (Miss. 2010) (citing ***Ruffin v. State***, 992 So. 2d 1165, 1169 (Miss. 2008)). Admissibility of prior bad acts or other crimes is likewise subject to an abuse-of-discretion standard. *See **Mingo v. State***, 944 So. 2d 18, 28 (Miss. 2006).

## ANALYSIS

I. **The trial court erred by not suppressing the videotaped confession of the appellant.**

¶15.    Neal asserts in this appeal violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, claiming he was denied his right to counsel.[7]  Accepting that, through the Fourteenth Amendment, the Fifth and Sixth Amendments apply, we first distinguish the two rights.  A Sixth-Amendment right to counsel is offense-specific. *See McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207, 115 L. Ed. 2d 158 (1991). It arises when the State advances judicial proceedings against an accused.[8]  ***Id.*** Unquestionably, Neal was in custody on a felony-escape charge, and, by the time he confessed to the burglary, he had been arrested for burglary and had made his first appearance before a judicial officer, where, once again, he had been informed of his rights. He was not served with warrants for the September and December 2006 crimes until after his

---

[7]In his brief (pages 4-5, 7, 9), Neal cites ***Pannell v. State***, 7 So. 3d 277, 279 (Miss. Ct. App. 2008) (violation of the right to counsel under the Fifth and Sixth Amendments).

[8]There may be exceptions, but for the purposes of this case, they do not apply.

first custodial interrogation had begun that day. He expressed early on that he wanted to see his lawyer and that he had a lawyer, before receiving warrants on the new charges. Had Neal been asked any questions regarding the offense of felony escape, his Sixth-Amendment right to counsel would have been violated, but he was not.

¶16.   In *McNeil*, the U.S. Supreme Court held that the accused's invocation of the Sixth Amendment right to counsel during judicial proceedings does not constitute invocation of right to counsel derived from *Miranda*'s Fifth-Amendment guarantee against compelled incrimination. *See id.* at 178-79. McNeil had been arrested in another state pursuant to a warrant charging him with armed robbery. Shortly after arrest, two officers arrived to retrieve him. *Id.* at 173. After advising him of his *Miranda* rights, the deputy sought to question him, and he refused to answer the questions. Once he was returned to Wisconsin, he was brought before a county-court commissioner on the armed-robbery charge, bail was set, and he was scheduled for preliminary examination. *Id.* An attorney was appointed to represent him. Later that same evening, a different detective visited McNeil at the jail. *Id.* That detective was investigating a murder, an attempted murder, and an armed burglary, based on separate crimes in a different county. McNeil was a suspect. McNeil was advised of his *Miranda* rights and signed a form waiving those rights. *Id.* In the first interview, McNeil did not deny knowledge of the crimes, but he said he was not involved. *Id.* at 173-74. Two days later, that police officer returned with detectives from the other jurisdiction. *Id.* at 174. The interview began with McNeil being advised of his *Miranda* rights and being provided a waiver form, which he signed. McNeil admitted that he had been involved in those crimes and he implicated two other men. *Id.* After checking with and questioning

10

those implicated by McNeil, the officers returned. Once again, they began the interview by administering *Miranda* warnings and obtaining McNeil's signature on a waiver form. *Id.* McNeil then acknowledged that he had lied about his involvement to minimize his own role in the crimes and provided and signed yet another statement recounting the events. *Id.* Later, he was formally charged with the crimes and transferred. *Id.* at 175.

¶17.    McNeil's pretrial motion to suppress the three incriminating statements was denied. *Id.* at 174. McNeil contended that his courtroom appearance with an attorney for the first crime constituted an invocation of a *Miranda* right to counsel and that any subsequent waiver of that right during police-initiated questioning regarding *any* offense was invalid. *Id.* The question certified to the Wisconsin Court of Appeals was:

> Does an accused's request for counsel at an initial appearance on a charged
> offense constitute an invocation of his Fifth Amendment right to counsel that
> precludes police-initiated interrogation on unrelated, uncharged offenses?

*Id.* The Wisconsin Supreme Court ultimately answered "no." *Id.*    The United States Supreme Court agreed. *Id.* at 182.

¶18.    The United States Supreme Court discussed the provisions of the Sixth Amendment as follows:

> The Sixth Amendment provides that "in all criminal prosecutions, the accused
> shall enjoy the right . . . to have the assistance of counsel for his defence."  In
> *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986),
> we held that once this right to counsel has attached and has been invoked, any
> subsequent waiver during a police-initiated custodial interview is ineffective.
> It is undisputed, and we accept for purposes of the present case, that at the time
> petitioner provided the incriminating statements at issue, his Sixth Amendment
> right had attached and had been invoked with respect to the West Allis armed
> robbery, for which he had been formally charged.

11

The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "'at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States v. Gouveia*, 467 U.S. 180, 188, 104 S. Ct. 2292, 2297, 81 L. Ed. 2d 146 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S. Ct. 1877, 1882, 32 L. Ed. 2d 411 (1972) (plurality opinion)). And just as the right is offense specific, so also its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense specific.

"The police have an interest . . . in investigating new or additional crimes [after an individual is formally charged with one crime.] . . . [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities . . . ." *Maine v. Moulton*, 474 U.S. 159, 179-180, 106 S. Ct. 477, 488-489, 88 L. Ed. 2d 481 (1985).

"Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.*, at 180, n. 16, 106 S. Ct., at 489, n.16.

. . .

Petitioner relies, however, upon a different "right to counsel," found not in the text of the Sixth Amendment, but in this Court's jurisprudence relating to the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), we established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived. On the contrary, the opinion recognized that statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.*, at 475, 86 S. Ct. at 1628.

*McNeil*, 501 U.S. at 175-76. *See also* *Rothgery v. Gillespie County, Texas*, 554 U.S. 191,

128 S. Ct. 2578, 171 L. Ed. 2d 366.

12

¶19.    The Sixth-Amendment-specific charge application was reaffirmed by our Court in

*Mack v. State*, 650 So. 2d 1289 (Miss. 1995), in which we stated:

> In *Balfour v. State*, 598 So. 2d 731 (Miss. 1992), this Court recognized as the
> U. S. Supreme Court did in *McNeil v. Wisconsin*, 501 U.S. 171, 174-76, 111
> S. Ct. 2204, 2207, 115 L. Ed. 2d 158, 166-67 (1991) that a defendant's Sixth
> Amendment right to counsel is offense specific.  It is clear under the court's
> holding in *McNeil* that Mack's invocation of his Sixth Amendment right to
> counsel on the burglary charge did not extend to the capital murder charge.

*Id.* at 1316.  There is no evidence in the record before us that Neal's Sixth-Amendment right

to counsel extended to the burglary charge.

¶20.    Nonetheless, the U.S. Supreme Court attached a right to counsel to the Fifth-

Amendment right to remain silent, a rule created in *Miranda* and recognized in the *Edwards*

and *McNeil* cases.  *See McNeil*, 501 U.S. at 164-76; *Edwards v. Arizona,* 451 U.S. 477, 480-

82, 101 S. Ct. 1880, 1882-83, 68 L. Ed. 2d 378 (1981); *Miranda,* 384 U.S. at 436.  Thus,

Neal had a Fifth-Amendment right neither to sign anything nor to speak without an attorney,

which he initially asserted, only to waive later.

¶21.    In *Wilson v. State*, 936 So. 2d 357 (Miss. 2006), we held that, even though a

defendant was in custody, for *Miranda* purposes, when he confessed, his confessions were

not the product of interrogation, and thus his statements were admissible.  *Id.* at 362.  This

Court addressed *Agee* hearings and recited the following:

> When objection is made to the introduction of the confession, the accused is
> entitled to a preliminary hearing on the question of the admissibility of the
> confession.  This hearing is conducted in the absence of the jury.  When, after
> the State has made out a prima facie case as to the voluntariness of the
> confession, the accused offers testimony that violence, threats of violence, or
> offers of reward induced the confession, then the State must offer all the
> officers who were present when the accused was questioned and when the

13

confession was signed, or give an adequate reason for the absence of any such witness. *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966).

*Id.* at 360 n.1.

¶22. Thus, in order for a confession to be admissible at trial, it must have been intelligently, knowingly, and voluntarily given, and not the product of police threats, promises or inducements. *Manix v. State*, 895 So. 2d 167, 180 (Miss. 2005).

¶23. In *Wilson*, the State made its *prima facie* case, and this Court found that Wilson had failed to provide any evidence of coercion, threats, or promises. *Wilson*, 936 So. 2d at 362. We likewise find that Neal has not offered any credible evidence of coercion, threat, or promise to secure his confession. Neal gave a confession that was not the product of interrogation, for the police had not even questioned him regarding the burglary at the time he confessed guilt to the burglary. Also, there is no evidence that the police gained any information from either taped interrogation that was asserted or used in obtaining an admission of guilt, after *Miranda* rights were afforded to him. The confession has every appearance of being the product of his own free will.

¶24. Following Neal's earlier assertion of his *Miranda* right to counsel and his right not to sign anything, the questioning was discontinued. Neal was left alone, and when the police officer returned, Neal was served with arrest warrants on the three separate crimes. No further questions were asked at that time. The officer did reveal the penalties for the three crimes and told Neal to return with his lawyer to discuss those crimes. Again, Neal was left alone before he was escorted to appear before the municipal judge for his first appearance

on the new charges. There was a break in custodial interrogation, beginning at about the twelve-minute mark of the first taped interview.

¶25. Neal asserts that, en route to the CPD, the police officers promised him that, if he would plead guilty to the burglary, he would get special treatment for serving up another suspect; an offer he testified he first refused (evidenced by the first video).

¶26. The trial court conducted an *Agee* suppression hearing and concluded after receiving the evidence that Neal had initiated the subsequent contact with officers Lewis, Pevey, Criddle, and McLemore, by requesting to speak to them, fully aware that counsel was not present. *See Agee*, 185 So. 2d at 673. The second video opened with Neal freely discussing the Livingston robbery and aggravated assault with Officers Criddle and McLemore. The officers interrupted Neal to read his *Miranda* rights to him, and the video revealed that Neal signed a waiver. It was not until after Neal had initiated contact with the officers, and then had waived his Fifth- and Sixth-Amendment rights, that he admitted guilt of the burglary. The trial court admitted only a redacted video for the jury to consider.

¶27. There is no dispute that Neal was in custody throughout these events. The precise issue presented to the trial court for a finding of fact was whether or not Neal initiated contact with the officers after having invoked his right. The trial court concluded that Neal had initiated the contacts. We discern no basis to overrule the court's factual finding. A transcript of the suppression hearing reveals that the trial court was aware of the caselaw involved and appropriately examined and applied the law.

¶28. In 1981, this Court cited *Edwards* for the proposition that an accused "'is not subject to further interrogation by the authorities until counsel has been made available to him,

15

*unless the accused himself initiates further communication, exchanges or conversations with the police*.'" ***Davis v. State***, 406 So. 2d 795, 800 (quoting ***Edwards***, 451 U.S. at 484-85) (emphasis added).

¶29.    In ***Colorado v. Spring***, 479 U.S. 564, 107 S. Ct. 857, 93 L. Ed. 2d 954 (1987), the United States Supreme Court held "that a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." ***Id.*** at 577. "This case presents the question whether the suspect's awareness of all the crimes about which he may be questioned is relevant to determining the validity of his decision to waive the Fifth Amendment privilege." ***Id.*** at 566.  Spring had been arrested on interstate transportation of stolen firearms and later was interviewed by different officers regarding a murder charge.  The Court further stated that the "fundamental aim in designing the ***Miranda*** warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.'" ***Id.*** at 572.  "Consistent with this purpose, a suspect may waive his Fifth Amendment privilege, provided the waiver is made voluntarily, knowingly and intelligently." ***Id.***  The trial court found in that case, as we do here, that there was no evidence that duress or coercion was used to induce the statements. ***Id.*** at 573.

¶30.    Neal, like Spring, submitted no credible evidence that his waiver of Fifth-Amendment privileges was anything other than voluntary.  As in ***Spring***, we find in this case no doubt that the accused's waiver of Fifth-Amendment privileges was knowingly and intelligently made – that is, that the accused understood that he had the right to remain silent (Neal

16

previously had asserted the right), and anything he said could be used as evidence against him. Neal also received advice from judicial officers. Neal orally acknowledged the right in the first video. Finally, Neal executed a signed waiver, contra to "not signing anything," as recorded on the video. "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574 (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986). Neal removed any room for doubt, for he expressed an understanding of those rights in fact, as he had exercised those very rights earlier that day. As stated in *Spring*,

> "[t]he Fifth Amendment's guarantee is both simpler and more fundamental: A defendant may not be compelled to be a witness against himself in any respect. The *Miranda* warnings protect this privilege by ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.

*Spring*, 479 U.S. at 574. As in *Spring*, Neal has made no allegation that he failed to understand the basic privilege guaranteed by the Fifth Amendment. *Id.* at 573-74. Neal, as in *Spring*, asserts that he was tricked or cajoled into a waiver. *Id.* However, he must offer sufficient evidence to cause a trial judge to believe that, in fact, occurred. Neal offered only conflicting, self-serving statements that he was tricked. Neal admitted at the suppression hearing that he had lied previously to courts to obtain favorable treatment. The trial court rejected his explanation, given the conflicting logic required to accept it, countered by four officers testifying to the contrary. We likewise, after careful consideration, can discern no trickery missed by the trial court, nor any element of duress or coercion used to induce the accused's statement. As cited in *Spring*, "Indeed, it seems self-evident that one who is told

17

he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled," especially given that the confession before us was not even in response to a question. *Id.* at 576.

¶31.   We find that the trial court did not abuse its discretion in admitting the confession.

> **II.   The appellant was irreparably and unfairly prejudiced when character evidence of an aggravated assault, other wrongs, acts, or other unrelated crimes were referenced by the prosecution in the presence of the jury.**

¶32.   Neal argues that evidence of the robbery should not have been admitted, because the robbery and the burglary did not "constitute a single transaction or occurrence or a closely related series of transactions or occurrences." *Duplantis v. State*, 644 So. 2d 1235, 1246 (Miss. 1994).  In fact, the trial court's pretrial ruling reveals that it agreed with this portion of Neal's argument, and the State did not mention or reference the robbery in its case-in-chief.

¶33.   It was only after Neal testified (contrary to the advice of his trial counsel) that the issue of the robbery came up.  Neal testified that he was being interrogated for a robbery and other burglaries in an attempt to buttress why he admitted guilt for the burglary for which he was being tried.  Neal testified that: (1) the officers had offered him a deal, (2) he had been questioned about a robbery and other burglaries, and (3) he had entered Peterson's home with the intent to assault him.  The trial court properly allowed cross-examination regarding Neal's claims.  The trial court then also allowed the State to rebut Neal's claim, not because it was part of single transaction, but because Neal had opened the door by his testimony, in which he asserted a different motive for the burglary and claimed the police offered him a

18

deal. Additionally, the trial court allowed the rebuttal to permit the State to "tell a complete story so that the jury could understand what's going on." *See Davis*, 660 So. 2d at 1252.

¶34. This Court has stated that:

> even if evidence is otherwise inadmissible, one party can open the door to its admission. *Crenshaw v. State*, 520 So. 2d 131, 133 (Miss. 1988). We have previously said that "[i]f a defendant opens the door to [the] line of testimony, ordinarily he may not complain about the prosecutor's decision to accept the benevolent invitation to cross the threshold."

*Payton v. State*, 897 So. 2d 921, 945 (Miss. 2003) (quoting *Randall v. State*, 806 So. 2d 185, 198 (Miss. 2001)) (citation omitted). *See also Pruitt v. State*, 807 So. 2d 1236, 1241 (Miss. 2002).

¶35. We find that the trial court did not abuse its discretion in admitting evidence that Neal had been questioned about the robbery.

## CONCLUSION

¶36. Accordingly, the judgment of the Lowndes County Circuit Court is affirmed, as the trial court did not abuse its discretion in admitted the confession or the testimony at issue.

¶37. **CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE SHALL NOT BE REDUCED NOR SUSPENDED, NOR SHALL APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY OTHER SENTENCE IMPOSED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND IN RESULT:**

19

¶38. Although I agree that none of the issues raised on appeal merits reversal, I do not fully embrace the majority opinion's far-reaching analysis regarding the trial court's refusal to suppress Neal's confession. Believing that much of the majority's analysis is unnecessary to our decision, I respectfully concur in part and in the result.

¶39. Neal makes two distinct arguments on appeal as to why his confession should have been suppressed: (1) after invoking his right to counsel, officers continued to question him about the burglary, citing *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1990, 68 L. Ed. 2d 378 (1981); and (2) the officers' promises of leniency rendered his confession involuntary, citing *Agee v. State*, 185 So. 2d 671 (Miss. 1966).[9] However, neither issue was properly raised in the trial court, and much of the evidence considered by the majority (i.e., the video recordings) was not presented for the trial judge's consideration before he ruled that the confession was admissible. In the absence of plain error, we should refrain from considering issues and evidence not raised at trial. *Wells v. State*, 849 So. 2d 1231, 1240 (Miss. 2003) (citing *Colburn v. State,* 431 So. 2d 1111, 1114 (Miss. 1983)).

¶40. In his written motion to suppress the confession, Neal's entire argument was that "Defendant was represented by counsel, there had been no valid waiver of his right to counsel, counsel was not present when the interview was conducted, and the Defendant was not advised of his *Miranda* rights prior thereto." While the motion clearly argued that the defendant's Sixth Amendment right to counsel was violated when the police questioned him without his attorney, it did not hint at the issues now raised on appeal.

---

[9]Neal does not raise on appeal the issue of whether his Sixth Amendment right to counsel had attached. Maj. Op. at ¶¶ 15-19.

¶41. Moreover, at the suppression hearing, Neal's attorney made *no* arguments; the trial judge simply inferred what legal issues might arise from the evidence presented. Notably, the evidence before the trial judge did not include either of the video recordings. It was not until after the trial judge had made his ruling that the prosecutor offered the recordings into evidence. Had these recordings been timely presented, Neal's attorney could have challenged the officers' claims that they did not question Neal any further after he had invoked his right to counsel. Because their testimony remained undisputed, the trial judge did not err in finding that the officers had ceased their questioning of Neal after he had asked for an attorney.

¶42. As for the argument that Neal was promised leniency, Neal did offer evidence, in the form of his own testimony, that he was coerced into a confession with promises that the charges would be dropped. Therefore, it is arguable that this issue was raised below. Yet, all of the officers involved testified that no such promises were made, and the trial judge found the officers' testimony more credible than Neal's. Because there was substantial evidence to support this finding of fact, and because the trial judge applied the correct legal standards, this argument is without merit. ***Chim v. State***, 972 So. 2d 601, 604 (Miss. 2008) (quoting ***Holland v. State***, 587 So. 2d 848, 860 (Miss. 1991)).

¶43. For these reasons only, I agree that reversal is not warranted.

21